IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

COLLIN R. GINTHER, d/b/a BUXMONT
GROUT CARE,

Plaintiff,

v.

PREFERRED CONTRACTORS INSURANCE
COMPANY RISK RETENTION GROUP, LLC,

Defendant.

CIVIL ACTION
NO. 16-686

**MEMORANDUM OPINION**

**SCHMEHL, J.  /s/ JLS**                                   **September  29, 2017**

## I.      INTRODUCTION

Plaintiff, Collin R. Ginther, d/b/a Buxmont Grout Care ("Plaintiff" or "Buxmont"),

brought the instant action, contending that Defendant, Preferred Contractors Insurance

Company Risk Retention Group, LLC ("Defendant" or "PCIC"), breached its insurance

contract and violated the Pennsylvania bad faith statute by denying Plaintiff's claim

under its policy with PCIC. Defendant contends that Plaintiff's claim is expressly

excluded from coverage under its insurance policy, and therefore it is entitled to an entry

of judgment as to Plaintiff's breach of contract and bad faith claims. Before the Court are

the parties' cross-motions for summary judgment. For the following reasons, summary

judgment is granted in favor of Defendant and denied to Plaintiff.

## II.     LEGAL STANDARD

Summary judgment is appropriate if there is no genuine dispute as to any material

fact and the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. Proc.

56(c).  "A motion for summary judgment will not be defeated by 'the mere existence' of

some disputed facts, but will be denied when there is a genuine issue of material fact." Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986)). A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

In undertaking this analysis, the court views the facts in the light most favorable to the non-moving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth. of N.Y. and N.J., 593 F.3d 265, 268 (3d Cir. 2010) (citing Reliance Ins. Co. v. Moessner, 121 F.3d 895, 900 (3d Cir. 1997)). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the non-moving party who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250.

The interpretation of an insurance contract is a question of law. Am. Auto. Ins. Co. v. Murray, 658 F.3d 311, 320 (3d Cir. 2011) (citations omitted). The issue of whether a claim is within a policy's coverage or barred by an exclusion may be decided on a motion for summary judgment. Bishops, Inc. v. Penn Nat'l Ins., 984 A.2d 982, 989 (Pa. Super. 2009) (quoting Nationwide Mut. Ins. Co. v. Nixon, 453 Pa.Super. 70, 682 A.2d 1310, 1313 (Pa. Super. 1996)).

A court must give effect to the plain language of the insurance contract read in its entirety. Am. Auto Ins. Co., 658 F.3d at 320 (citation omitted). When the policy

language is ambiguous, the provision must be construed in favor of the insured. Id. (quoting Med Protective Co. v. Watkins, 198 F.3d 100, 104 (3d Cir. 1999)); 401 Fourth St., Inc., v. Investors Ins. Grp., 789 A.2d 166, 174 (Pa. 2005) (citing Mohn v. Am. Cas. Co. of Reading, 326 A.2d 346, 352 (Pa. 1974)).

III.    **FACTUAL BACKGROUND**

The material facts of this case are not in dispute and have been stipulated to by the parties. Plaintiff Buxmont is an unincorporated business located in Sellersville, Pennsylvania and its principal is Collin Ginther. (Joint Stipulation of Material Facts, ¶ 1.) PCIC is a limited liability company located in Billings, Montana that issued a policy of commercial general liability insurance to Buxmont effective from June 24, 2013 to June 24, 2014. (JSOF, ¶¶ 2-3, Ex. A.) The policy in question had limits of $1 million per occurrence and in the annual aggregate. (JSOF, ¶ 3.) Buxmont made timely payments of premiums due under the Policy and fulfilled all other conditions precedent under the Policy. (JSOF, ¶ 5.) Plaintiff's application for insurance that was submitted to PCIC on June 24, 2013, stated that Buxmont was engaged in "[b]asic tile work on bathrooms and kitchens of residential homes and some janitorial cleaning." (JSOF, ¶ 6, Ex. B.)

Buxmont was hired by Regal Abstract, LP and First American Abstract of PA, LLC, to clean and repair tile and grout in the lobby of their premises in Lancaster, Pennsylvania. (JSOF, ¶ 7, Ex. C.) Plaintiff performed the work on February 6, 2014. (JSOF, ¶ 8.) The work included grout removal in an area of about 600 square feet of tile. (JSOF, ¶ 9.) Plastic sheets had been hung in the area in which Buxmont performed its work because the area was undergoing general renovations. (JSOF, ¶ 10.) Buxmont did not seal the entire area off in an effort to allow access.  (JSOF, ¶ 11.) Plaintiff used drills,

grinders and other tools to remove the grout, and in doing so, created grout dust that migrated from the lobby and settled in other parts of the offices in which it was working. (JSOF, ¶¶ 12, 13.) Plaintiff worked late into the evening, but then was asked to leave by a representative of First American because the quantity of dust that had been generated was greater than he had expected. (JSOF, ¶ 14.)

Regal and First American submitted a claim for the costs associated with cleaning up the grout dust to their property insurer, Donegal Mutual Insurance Company, and Donegal subsequently paid the claims of both Regal and First American. (JSOF, ¶¶ 15, 16.) Donegal submitted a claim for property damage to PCIC, reporting that Plaintiff "was performing tile work. Dust buildup throughout the building." (JSOF, Ex. D.) PCIC, through its adjustment firm, reviewed Donegal's claim and issued a disclaimer letter. (JSOF, Ex. E.) Among the grounds for disclaiming coverage cited by PCIC in this first disclaimer letter was Exclusion "O" to the policy, covering "deleterious substances" ("the Deleterious Substances Exclusion."). (JSOF, Ex. A.)

The Deleterious Substances Exclusion provides, in relevant part, that the Policy does not apply to:

> 'property damage' arising out of, resulting from, caused by, contributed to by, or in any way related to, in whole or in part, the discharge, dispersal, release, escape, disposal, existence, presence, handling, ingestion, inhalation, installation, sale, distribution, encapsulation, storage, transportation, use or removal of, or exposure to any "deleterious substance."

> (1) For purposes of this exclusion, "deleterious substance" shall be defined to include . . .

> (v) Silica, silicates, sand, or any material containing silica, silicates, or sand;

> . . .

(vii)  Concrete, concrete dust or concrete compounds;

(2)  This exclusion applies . . .

(ii)  Equally to any . . . "property damage" involving air, land, structure, building, outdoors, indoors, confined or enclosed space, or the air within any of them, watercourse or water, including surface or underground water;

(iii)  Regardless of whether any alleged defects or claimed negligence in design, construction or materials, or any other conduct or misconduct, may have or is claimed to have precipitated, caused in whole or in part, or acted jointly, concurrently or in any sequence with any "deleterious substance" in any form whatsoever in causing or contributing to "bodily injury" or "property damage."

(3)  To any loss, cost or expense arising out of any:

(i)  Request, demand, order or requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of any "deleterious substances" in any form whatsoever; or

(ii)  Claim or "suit" seeking, involving or arising from any testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of any "deleterious substances" in any form whatsoever.

(JSOF, ¶ 20, Ex. A.)

In March of 2015, Donegal, exercising its rights of subrogation under the insurance policies it issued to Regal and First American, filed two lawsuits against Buxmont in the Lancaster County Court of Common Pleas (the "Lancaster County suits.") Donegal's complaints in the Lancaster County suits allege that "[d]uring the process of attempting to clean, polish and/or otherwise improve the surface on February 6, 2014, Defendant Ginther and/or his company, Buxmont Grout Care, negligently caused a dust storm while attempting to clean and/or repair tile and grout work on the insured's property." Donegal further alleged that "[t]he dust storm damaged Plaintiff's

insured's property, damaged Plaintiff's insured's equipment, and necessitated substantial clean up." (JSOF, ¶ 22, Exs. F and G.) Donegal demanded $7,417.88 from Buxmont in the Regal suit and $36,300.24 from Buxmont in the First American suit. (JSOF, ¶¶ 23, 24.) Buxmont timely tendered the Lancaster County suits to PCIC for a defense and indemnity, and PCIC, through its claims adjuster, Golden State Claims Adjusters, reviewed the tender and issued a second disclaimer letter on September 1, 2015. (JSOF, ¶¶ 25, 26, Ex. H.)

Upon receiving the second disclaimer letter, and having been served with the Lancaster County suits, on September 8, 2015, Buxmont hired private counsel to defend the claims. (JSOF, ¶ 27.) On September 8, 2015, counsel for Buxmont spoke with a claims manager for Golden State concerning the second disclaimer letter. (JSOF, ¶ 28.) Among the points raised by counsel for Buxmont in his conversation with the claims manager was that grout came in two forms, "concrete-based and epoxy-based," that "epoxy-based grout does not contain concrete compounds," and that without further investigation "it is not clear whether" Buxmont "had worked with concrete based grout or epoxy-based grout." (JSOF, ¶ 29, Ex. I.)

Accordingly, PCIC engaged a consultant, Patrick Watson, to visit the lobby, "conduct" an "inspection" of the grout on which Buxmont worked, and, if possible, "decipher the content of the grout." (JSOF, ¶ 30.) Mr. Watson prepared a report dated October 28, 2015. (JSOF, ¶ 32, Ex. N.) Mr. Watson visited the lobby on September 29, 2015, and conducted on-site tests of the grout material that Buxmont was working on, including "surface preparation, scratch testing, depth of carbonation and pH tests plus acid reactivity tests." (JSOF, ¶ 35, Ex. N.) Mr. Watson concluded that the grout Buxmont

was working on "was a cementitious grout with siliceous granular material, most likely mason's sand. A brown tone pigment was also in the grout." (JSOF, ¶ 36, Ex. N.)

Following receipt of Mr. Watson's report, PCIC, through Golden State, issued another disclaimer letter dated October 29, 2015, to counsel for Ginther. (JSOF, ¶ 37.) In its e-mail transmitting this third disclaimer letter, PCIC, through Golden State, advised counsel for Buxmont that per Donegal's attorney he had "until October 30, 2015 to file an answer to" the Lancaster County Suits. (JSOF, ¶ 38.) Counsel for Buxmont responded in an e-mail dated November 2, 2015, that "[w]hile Donegal's complaint is replete with options to file preliminary objections, your request for an extension was limited to filing an "Answer" to the complaint .... So not only did you leave Mr. Ginther 1 day to respond to the Complaints —but you also significantly tied his hands concerning the legal defenses he may raise." (JSOF, ¶ 39.) After reviewing the November 2, 2015 e-mail from counsel for Buxmont, Golden State concluded that he "was notified no later than 9/24/15 of a 20-day extension to file [an] answer," and that after a further extension until October 30, 2015 was obtained, counsel for Buxmont was informed "telephonically of the extension." (JSOF, ¶ 40.)

On November 11, 2015, Buxmont filed Answers to each of the Lancaster County suits and since then, through counsel, has defended the claims raised therein. (JSOF, ¶ 43.) On December 14, 2016, in exchange for relief from immediate collection efforts, Buxmont executed stipulated judgments concerning the Lancaster County suits for $36,300.24 and $7,417.88. (JSOF, ¶ 44.) In order to defend the claims raised against it and pursue all legal remedies, Buxmont has incurred costs and attorney fees through the month of November, 2016 totaling $30,873.00. (JSOF, ¶ 45.)

## IV.     DISCUSSION

Plaintiff brings claims against PCIC for breach of contract and violations of Pennsylvania's bad faith statute, 42 Pa. Cons. Stat. § 8371. As will be discussed more fully below, I find that PCIC did not breach its insurance contract with Plaintiff, and therefore, I do not find any bad faith conduct on the part of PCIC.

To succeed on a breach of contract claim, plaintiff must show "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." Caroselli, Sr. v. Allstate Property and Cas. Ins. Co., 2010 WL 3239356, at *4 (E.D. Pa. Aug. 16, 2010) (citing CoreStates Bank, N.A. v. Cutillo, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999). Under Pennsylvania law, "the 'interpretation of an insurance contract regarding the existence or non-existence of coverage is generally performed by the court.'" Nationwide Mut. Ins. Co. v. CPB Intern., Inc., 562 F.3d 591, 595 (3d Cir. 2009) (quoting Gardner v. State Farm Fire & Cas. Co., 544 F.3d 553, 558 (3d Cir. 2008)). In the instant matter, the issue is whether PCIC had a duty to defend and indemnify Plaintiff for the costs incurred in cleaning up the dust that was disbursed when it performed the work in question.

A court must look first to the language of the policy to determine the intent of the parties. Nationwide Mut. Ins. Co. v. CPB Intern., Inc., 562 F.3d 591, 595 (3d Cir. 2009) (quoting Donegal Mut. Ins. Co. v. Baumhammers, 938 A.2d 286, 290 (Pa. 2007)).  When the language of the policy is clear and unambiguous, the court must give effect to that language. Id., (quoting Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co., 908 A.2d 888, 897 (2006)). However, when a provision in the policy is ambiguous, the Court is to construe the policy in favor of the insured. Id. "Contractual

language is ambiguous 'if it is reasonably susceptible of different constructions and capable of being understood in more than one sense.'" Madison Construction Co. v. Harleysville Mutual Ins. Co., 735 A.2d 100, 106 (Pa. 1999) (quoting Hutchinson v. Sunbeam Coal Co., 513 Pa. 192, 519 A.2d 385, 390 (Pa. 1986). However, courts "should read policy provisions to avoid ambiguities if possible and should not torture the language to create them." Spezialetti v. Pac. Employers Ins. Co., 759 F.2d 1139, 1142 (3d Cir. 1985).

Keeping these principles in mind, I will now address the arguments raised by the parties in their respective motions. I conclude that the policy exclusion regarding the definition of "deleterious substance" is unambiguous as to whether or not it applies to a grout that contains silicates such as the grout in question. Accordingly, Plaintiff's policy with Defendant does not provide coverage for the loss in the underlying suits and Defendant did not breach its insurance contract with Plaintiff.

Plaintiff claims that PCIC should provide coverage under its policy for the cleanup costs of the property where he performed the tile work. Defendant's defense for not providing coverage focuses on an exclusion in the policy for "deleterious substances." PCIC argues that it is not responsible for damages caused by "deleterious substances," which are defined as by the policy to include, *inter alia*, "silica, silicates, sand, or any material containing silica, silicates, or sand" and "concrete, concrete dust or concrete compounds."(JSOF, Ex. A.)

After becoming involved in this matter, Plaintiff's counsel raised a question as to the type of grout involved in the work performed by Plaintiff. PCIC obtained an expert to ascertain the makeup of grout to determine if it fell under the policy exclusion for

deleterious substances. The expert found that the grout Plaintiff was working with "was a cementitious grout with siliceous granular material, most likely mason's sand. A brown tone pigment was also in the grout." (JSOF, Ex. N.)

Defendant argues that the policy's definition of "deleterious substances" includes "silica, silicates, sand, or any material containing silica, silicates or sand," and because Defendant's expert found that the grout contained a "siliceous granular material, most likely mason's sand," Defendant was not required to provide coverage. Plaintiff argues that Defendant did not cite this ground for disclaiming coverage in either its first or second disclaimer letters, and therefore, should be barred from doing so now.

Insurers who fail to assert all possible defenses when denying coverage are estopped from raising defenses not included in reservation of rights letters if their failure to raise all possible defenses has prejudiced the insured. Pennsylvania Tpk. Comm'n. v. Transcon. Ins. Co., 1995 WL 465197, at *8 (E.D. Pa. Aug. 7, 1995). It cannot be said in this matter that PCIC's failure to cite the relevant policy language about silica and silicates when it disclaimed coverage prejudiced Plaintiff, as Plaintiff was already on notice that PCIC was disclaiming coverage, albeit under a different provision of the exclusion. Further, PCIC could not have raised this exclusion language until after their expert examined the grout on September 29, 2015, and reported that it contained siliceous material. This expert analysis didn't occur until nearly a month after PCIC had written its second disclaimer letter on September 1, 2015.

The deleterious substances exclusion specifically includes silica, silicates or any material containing silica or silicates, and an expert found the grout in question contained a siliceous granular material. Clearly, grout containing siliceous material is a "material

containing silica or silicates," for which PCIC explicitly excluded coverage. Therefore, Defendant did not breach its insurance contract with Plaintiff by disclaiming coverage under the policy provision in question. As Defendant did not breach its insurance contract with Plaintiff, PCIC also did not engage in bad faith. There can be no finding of bad faith where the insurer "did not have a duty to provide coverage under the provisions of the Policy." The Limited, Inc. v, Cigna Insurance Co., 228 F. Supp. 2d 574, 584 (E.D. Pa. 2001).

Defendant also argues that the grout in question was cementitious and therefore, a concrete compound and falls under the relevant provision of the deleterious substances exclusion. As I have already determined that Defendant properly denied coverage to Plaintiff based upon the silicates provision of the deleterious substances exclusion, I will not consider this issue at this time. As the grout in question contained siliceous material and fell under the exclusion regarding silica and silicates, I have no choice but to grant Defendant's Motion for Summary Judgment and deny Plaintiff's Motion for Summary Judgment.

## V.     CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment is granted and Plaintiff's Motion for Summary Judgment is denied.

An appropriate order follows.